478 A.2d 850

**COMMONWEALTH of Pennsylvania**

v.

**Randy Glenn CHIESA, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1984.

Filed July 6, 1984.

402

George M. Lynch, Latrobe, for appellant.

Margaret S. Picking, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

Before POPOVICH, HOFFMAN and LIPEZ, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence which was imposed upon appellant, Randy Chiesa, after his conviction for robbery and criminal conspiracy. We affirm.

Appellant raises six issues which arise from searches and seizures which were conducted by the police.

Appellant contends that: (1) the first search of appellant's automobile was illegal because it was without a warrant; (2) the first search of appellant's automobile was illegal because the doctrine of plain view is inapplicable; (3) the warrantless search was illegal because the police officer failed to establish any exigent circumstances; (4) the warrantless search was illegal because the police officer failed to establish any of the exceptions to obtaining a warrant; (5) the subsequent searches of appellant's automobile and the residence were tainted by the initial illegal search of the car; and (6) the location of appellant's car which was in his driveway was a location where the appellant had a reasonable expectation of privacy. We must reject appellant's contentions.

The facts, which were recounted for the most part by the suppression court are as follows:

On September 20, 1980, at approximately 9:00 p.m., an armed robbery occurred at the Highway Theatre on Route 30 near Latrobe, Pennsylvania. A general description of the size of a man who was wearing a mask was given to Pennsylvania State Policeman Laposky. Trooper Laposky briefly put under surveillance the residence of one Arthur Bollman in the Village of Snydertown in Derry, Westmoreland County, Pennsylvania, because the physical description of one of the actors matched the physical description and mask worn by an actor in five previous robberies which the police were investigating. The appellant, a tenant at the Bollman residence, was a suspect in these prior robberies. After a brief surveillance, Trooper Laposky entered upon the Bollman property on a driveway where the appellant's

vehicle was parked. While using a flashlight, Laposky looked into the front seat of the automobile and saw what appeared to be a mask lying in open view on the front seat.

The second search of the car—the 1975 Blue Chevrolet Coupe of the defendant—produced a navy blue ski mask, a 22 caliber colt gun and one shell, a plaid shirt, a red vinyl bag containing a blue shirt and a .357 gun with a shoulder holster and finally a hash pipe.

The search of the basement of the Bollman residence with the written consent of the defendant produced a blue money bag containing $506.00 in currency.

The suppression court concluded that appellant's Fourth Amendment rights were not violated. We agree.

█ Our function on review of an order denying a motion to suppress is to determine whether the factual findings of the lower court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982).

█ To begin with, the police officer's discovery of the mask which was on appellant's front seat was permissible because appellant did not have a reasonable expectation of privacy.

The record indicates that the Bollman house had many tenants and obviously many people were in and out of the house and parking area not to the exclusion of the appellant who was a tenant. Appellant parked his car in an adjacent parking area and did not have exclusive rights to this parking area. Appellant did not pull the car into a garage but left his car front seat in open view at the edge of the property which was partly in a fenced area and partly outside of the fenced area.

At this time the officer felt the hood of the automobile. After determining that it was still warm, the officer went to the doorway of the Bollman residence where he was greeted by an occupant who summoned the appellant. Trooper Laposky asked the appellant to get his car keys and come outside. The appellant, without protest, and although he had no idea of the identity of the trooper, amazingly complied with the unidentified party's request, and voluntarily opened his car door and retrieved what was in fact a mask off the front seat of his car.

Laposky determined it was indeed a mask. He then placed the appellant in the police car, read him his *Miranda* rights, and procured a written consent to search the appellant's car and that portion of the Bollman residence where the appellant resided as a tenant.

The appellant testified that since a mask was found, it was useless not to sign a consent to search the balance of his car or his tenement. The appellant acknowledged that his signature appeared on the written consent form identified as Commonwealth's Exhibit "1" at the suppression hearing. However, he attempted to excuse the signature which he voluntarily affixed on the consent form on the basis that he was told that the trooper would get a search warrant if he refused. In the words of appellant's lawyer, "the jig was up" and appellant may as well sign a consent form anyway.

In reviewing appellant's claim, we reject his suggestion that the plain view doctrine is inapplicable. Under the plain view doctrine, the cases fall into two distinct categories. The first line of cases "involves those situations in which the 'view' takes place *after* an instrusion into a constitutionally protected area. Under this line of cases if the original intrusion is justified, such as by consent, hot pursuit, warrant or other, objects sighted in plain view will be admissible, see *Ker v. California, supra* [374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)] so long as the view was inadvertent." (emphasis in original) (cases omitted). *Commonwealth v. Adams*, 234 Pa.Super. 475, 479, 341 A.2d 206,

208 (1975). *Accord Commonwealth v. Burton*, 292 Pa.Super. 73, 436 A.2d 1010 (1983). Under the second line of cases, which is applicable to the instant case "the view takes place *before* any intrusion into a constitutionally protected area." *Id.*, 234 Pa.Superior Ct. at 482, 341 A.2d at 209. (emphasis in original).

We continued with the following discussion:

"These cases are distinguishable from the first line of cases in two respects. First, because no intrusion into a constitutionally protected area takes place, fourth amendment rights are not involved and the requirement that the view be inadvertent is not applicable. Secondly, the warrantless seizure of evidence cannot be justified by the plain view alone. Thus in *United States v. Lee*, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927) when a Coast Guard patrol boat on the high seas approached a rum runner's launch to examine her with a search light, Mr. Justice BRANDEIS could say that "no search on the high seas [was] shown." *Id.* at 563, 47 S.Ct. at 748. Nearly half a century later in *Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974) the Court held that an environmental field inspector who had entered the defendant's land to run a visual test on smokestack pollution committed no fourth amendment violation. Noting that the Court was not advised that the inspector had entered land from which the public was excluded and that he only "had sighted what anyone in the city who was near the plant could see in the sky—plumes of smoke," the Court stated that any invasion of privacy "if it can be said to exist, [was] abstract and theoretical." *Id.* at 865, 94 S.Ct. at 2116.

*It is generally held that the mere looking at that which is open to view is not a search. Commonwealth v. Anderson*, 208 Pa.Super. 323, 222 A.2d 495 (1966). In *Commonwealth v. DeJesus*, 226 Pa.Super. 79, 310 A.2d 323 (1973), an officer investigating a complaint against the occupants of a parked car, did not commit a search

when he examined the occupants of the car and observed a revolver. In those situations in which no intrusion into a constitutionally protected area occurs, no search is made. *Commonwealth v. Hernley*, 216 Pa.Super. 177, 263 A.2d 904 (1970) [, cert. den. *Hernley v. Pennsylvania*, 401 U.S. 914, 91 S.Ct. 886, 27 L.Ed.2d 813 (1971).] *See Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (search of exterior of car did not infringe any expectation of privacy); *United States v. Minton*, 488 F.2d 37 (4th Cir.1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1936, 40 L.Ed.2d 287 (1974) (open fields are not constitutionally protected areas); *United States v. Various Gambling Devices*, 478 F.2d 1194 (5th Cir.1973) (observation made in building open to public).

The second distinction in this line of cases is that the warrantless seizure of evidence cannot be justified by the plain view alone. This was clearly stated in *Coolidge v. New Hampshire*, [403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) [2] ] *supra*, "[P]lain view alone is never enough to justify the warrantless seizure of evidence.... [E]ven where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." *Id.*, 403 U.S. at 468, 91 S.Ct. at 2039 (emphasis original). Thus, in those cases in which the view precedes an intrusion into a constitutionally protected area the officer must be able to rely upon exigent circumstances, *see Commonwealth v. DeJesus, supra*, or he must obtain a warrant before he seizes the evidence. *See, e.g., State v. Brown*, 1 Or.App. 322, 461 P.2d 836 (1969) (officer observed marijuana growing in open view in greenhouse); *People v. Bradley*, 1 Cal.3d 80, 81 Cal.Rptr. 457, 460 P.2d 129 (1969) (officer observed marijuana plant growing under tree in defendant's yard). This rule is contrary to the rule in the after-intrusion line of cases. In those cases because the justifiable intrusion already has occurred, no further intrusion is occasioned by the seizure of evidence which is in plain view and the seizure is permitted without more. *See Ker v. California, supra*. In the preintrusion view

cases no intrusion is occasioned by the view and the intrusion necessary to seize evidence must be justified by a warrant or one of the exceptions to the warrant requirement. *See Coolidge v. New Hampshire, supra." Id.* at 210–211 (emphasis added).[1]

We have reviewed the record in accordance with the above guidelines and agree with the suppression court's conclusion that appellant, a tenant, "left his car parked in a parking lot where visitors, guests, fellow tenants, and even passersby could look in the window of his car and see the "mask" on the front seat. The, [appellant,] Chiesa, therefore, could not expect that his car would be protected by the constitution from an investigating officer looking in his car that was parked unattended in a common driveway." Suppression Court's Opinion at 9. *See Commonwealth v. Lowery,* 305 Pa.Super. 66, 73, 451 A.2d 245, 248 (1982), (Where "joint access or control exists, there can be no reasonable or legitimate expectation of privacy"). Additionally, we have said that "the officer's discovery, albeit with the aid of a flashlight, of the marijuana in plain view was not improper." *Accord Texas v. Brown,* 460 U.S. 730, 738, 739, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502, 512 (1983) (plurality opinion) ("the use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the constitution.") (Citations omitted). *See Commonwealth v. Burton,* 292 Pa.Super. 73, 77, 436 A.2d 1010, 1013 (1981).

■ The subsequent warrantless searches were legal because appellant consented to the search of his car and to the

---

1. The United States Supreme Court in a plurality opinion in *Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502, 510 (1983), on remand 657 S.W.2d 797 (Tex.Cr.App.1983), recently stated that "the *Coolidge* plurality's discussion of 'plain view,' ... has never been expressly adopted by a majority of this Court." However, even the plurality opinion in *Texas,* admitted that *Coolidge* "should obviously be the point of reference for further discussion of the issue." *Id.* at 737, 103 S.Ct. at 1540, 75 L.Ed.2d at 511. Additionally, two of the Justices saw no reason to criticize *Coolidge* for the plain view doctrine, and three of the Justices cited *Coolidge* for the plain view doctrine. *See generally* LaFave § 7.5 Ftn. 53 (1984 Pocket Part).

search of the basement where appellant resided. *Commonwealth v. Hartford*, 313 Pa.Super. 213, 459 A.2d 815, 818 (1983). ("With few exceptions, an intrusion into a place of privacy may not be effected absent a warrant issued based upon probable cause, and one of those exceptions is when a criminal suspect *consents* to the search.") (emphasis added) (citation omitted). *Accord Zap v. United States*, 328 U.S. 624, 630, 66 S.Ct. 1277, 1280, 90 L.Ed.2d 1477 (1946). Thus, appellant also is not entitled to relief on this issue.

Because we are unable to agree with appellant's contention that the subsequent searches were tainted by the initial illegal search because as set forth above, appellant did not have a reasonable expectation of privacy in the mask on the front seat of appellant's car which was parked in a common driveway, we must affirm.

Judgment of sentence is affirmed.

LIPEZ, J., concurs in the result.