545 A.2d 1372

**COMMONWEALTH of Pennsylvania**

**v.**

**Mark Joseph FERRARI, Sr., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 30, 1987.

Filed July 1, 1988.

308

Ronald H. Elgart, Levittown, for appellant.

Shawn Markey, Assistant District Attorney, Doylestown, for Com., appellee.

Before BECK, KELLY and POPOVICH, JJ.

KELLY, Judge:

Appellant, Mark Joseph Ferrari, appeals from judgment of sentence imposed following his conviction of various

offenses relating to his telephonic harassment and physical assault of his estranged wife. On appeal, appellant contends that he was improperly denied a preliminary hearing as the result of the trial court's misapplication of Pa.R. Crim.P. 231(a), illegally seized evidence was improperly admitted under the plain view exception, and the evidence was insufficient to sustain his conviction for carrying a firearm without a license. We affirm judgment of sentence.

## FACTS AND PROCEDURAL HISTORY

On October 25, 1985, appellant's wife removed herself and her one year old child from the marital home in Bellmar, New Jersey and moved to her parent's home in Warminster, Pennsylvania. The marital separation was not amicable.

Between October 25, 1985 and November 11, 1985, appellant made twelve or more calls to his wife at her parent's home; approximately one half of the calls involved threats of violence. On November 11, 1985, appellant made twelve more calls. Again, the majority contained threats of violence directed at his estranged wife and her family. These incidents were reported to the police by appellant's wife on October 29, 1985 and November 11, 1985.

On November 19, 1985, appellant drove to Warminster in his aunt's car, parked at the bottom of the street where his wife's parents lived and later drove by the house. He was recognized by his wife despite the fact that he was wearing a distinctive yellow clown's wig in an apparent attempt to disguise his identity.[1]

1. Appellant acknowledges that numerous phone calls were made by him to his wife during that time period; he claimed, however, that both parties to the conversation "called each other derogatory names and, in general, threatened each other and became vituperative." (Appellant's Brief at 7). Similarly, he admits being in his aunt's car when it was driven past his wife's parent's home; but, he claims he was on the floor in the back of the car and that *a friend* wearing a clown wig was driving. (Appellant's Brief at 8). The trial court was, of course, free to disbelieve appellant's assertions and his characterizations of the events in question. On appeal, we review the evidence,

On November 20, 1985, at 8:40 A.M., appellant kicked open the locked front door of his wife's parent's home in Warminster. While appellant's wife frantically called the police, appellant struggled with his sister-in-law for control of his one year old son. Moments later, appellant's wife hung-up the phone and entered the fray. Appellant's sister-in-law broke free and fled with the child to the relative safety of the second floor of the house.

Appellant's wrath was then focussed upon his estranged wife. First, he picked her up and threw her into a door, knocking the door off its tracks. As she attempted to escape from him, he grabbed her by the throat and told her he was going to kill her. Somehow, she managed to escape his grasp and flee out the front door. She ran, with appellant following close behind, to a neighbor's house. She rushed in an unlocked door, locked the door, and yelled for her neighbor to call the police. Appellant briefly pounded on the door demanding admission, but then fled upon hearing the sirens of the approaching police. His attempt to flee was unsuccessful.

Shortly after appellant's arrest, a car matching the description given of the car involved in the drive-by incident on November 19, 1985, was discovered in a nearby post-office parking lot. Visual observation through the car's windows revealed that part of a yellow clown's wig was sticking out from under the driver's seat. Based upon the current incident and information received from a fellow police officer concerning a pending warrant and the substance of the appellant's wife's prior police reports, the investigating officer concluded that the wig might be evidence of a crime and so he proceeded to open the car door to get a better view of the wig. Without moving the wig, the officer observed a .38 caliber revolver which was with the wig under the driver's seat. The gun and the wig were later seized when the detectives assigned to the case impounded the car and inventoried its contents.

as we must, in the light most favorable to the Commonwealth as the verdict winner.

Subsequently, appellant acknowledged that he was the driver of the car searched. Appellant claimed that the New Jersey police had returned his "off-duty weapon" to him on November 19, 1985, that he had placed it in his aunt's car, but that he had forgotten the gun was in the car when he drove to Pennsylvania the next day. (Appellant's Brief at 10). It is undisputed that appellant was suspended from the New Jersey State Police at the time of these incidents and that he had no license to carry a firearm in Pennsylvania.

Appellant was charged on November 20, 1985, with burglary, criminal trespass, simple assault, harassment by communication and related offenses. For reasons not apparent from the record certified to this Court, the original charges were dismissed on December 30, 1985. The charges were refiled, however, on January 2, 1986, and a new arrest warrant was issued.

Appellant had by that time returned to his home in New Jersey. Appellant's pre-trial motion to quash the informations filed against him asserted the following additional facts which are uncontested by the Commonwealth. The new arrest warrant was orally communicated to the New Jersey police who then arrested appellant. Appellant was brought before a New Jersey magistrate and released on five hundred dollars bail. The Pennsylvania warrant was then transmitted to New Jersey. Upon review of the warrant, the New Jersey prosecutor concluded that the warrant could not be enforced in New Jersey. The warrant was returned undelivered.

The record discloses that when appellant failed to return to Pennsylvania for the preliminary hearing scheduled for February 13, 1986, he was declared a fugitive from justice. On March 4, 1986, the Commonwealth was granted leave to file an information against appellant pursuant to Pa.R. Crim.P. 231(a). After the information was filed, arraignment was set for March 14, 1986. Appellant again failed to appear and a bench warrant was issued for his arrest.

On March 17, 1986, the Commonwealth initiated proceedings under the Uniform Criminal Extradition Act, 42 Pa.C.S.A. §§ 9121 *et seq.,* to extradite appellant. A requisition request was filed with our Governor pursuant to 42 Pa.C.S.A. § 9144, and approved in accordance with 42 Pa.C.S.A. § 9143. Our Governor's formal requisition was then transmitted to the Governor of New Jersey. Rather than continue to resist extradition via habeas corpus proceedings in New Jersey,[2] appellant elected to return to Pennsylvania. *See* N.J.S.A. § 2A:160–30 (Waiver and Voluntary Return).

Upon return, appellant filed motions to quash the informations against him and suppress certain evidence. Those motions were denied. Appellant was then tried in a bench trial and convicted of felonious criminal trespass, carrying a firearm without a license, simple assault, and harassment by communication. At sentencing, appellant testified that his divorce was final and custody matters had been resolved. He concluded his statement to the sentencing court as follows:

I'm embarrassed for what happened. I ruined the rest of my life for the acts of one day. I don't want to go to jail.

Appellant was sentenced to twenty-three months probation. This timely appeal follows.

## I.

Appellant first contends that the trial court erred in failing to quash the informations filed against him. He argues that "good cause" under Pa.R.Crim.P. 231(a) was not established so as to justify proceeding without a preliminary hearing. Appellant argues further that the denial of a preliminary hearing prejudiced him by denying him the discovery benefits incident to preliminary hearings. Appellant concludes that because the informations against him should have been quashed, we must reverse his convictions.

The Commonwealth responds that "good cause" existed to permit the filing of informations against appellant pursu-

---

**2.** *See* N.J.S.A. 2A:160–18 (right to challenge extradition by habeas corpus).

ant to Pa.R.Crim.P. 231(a). The Commonwealth argues that good cause existed in that appellant was a fugitive and that an information against appellant was necessary to expedite the extradition process. The Commonwealth argues alternatively that even if appellant was improperly denied a preliminary hearing he was not prejudiced by the denial.

The trial court expressed reservations about treating a defendant who is actively fighting extradition from a sister state as a "fugitive," but nonetheless concluded that appellant's fugitive status was sufficient "good cause" to permit the Commonwealth to proceed under Pa.R.Crim.P. 231(a). The trial court opined that forcing appellant to choose between enjoying the discovery benefits of a preliminary hearing and fighting extradition did not offend due process, as no prejudice was shown to have arisen from the denial of a preliminary hearing.

We find that appellant was improperly denied a preliminary hearing in this case. However, we also find that appellant suffered no prejudice as the result of that error. Therefore, we find no basis to quash the information or grant other relief. Our reasoning follows.

## A.

Despite the trial court's understandable misgivings, appellant was unquestionably a "fugitive from justice" as that phrase is used in extradition law. Undeniably, the phrase ordinarily calls to mind an image of one who, having committed a crime and anticipating detection and arrest, *flees from the jurisdiction to escape punishment. See Webster's Ninth New Collegiate Dictionary* 496 (1983); *Black's Law Dictionary* 604 (5th ed. 1979); 1 *Bouvier's Law Dictionary* 1321 (Rawle rev. 1914). Nonetheless, it is well-settled that a person is a "fugitive from justice" if the person charged with an offense was present in the charging state when the offense was committed and thereafter leaves the charging state, *regardless of the reasons or motives for the exodus. See Commonwealth ex rel. Smal-*

*ley v. Aytch,* 247 Pa.Super. 23, 27–28, 371 A.2d 1018, 1020–21 (1977) (collecting cases); *see also* Murphy, *Revising Domestic Extradition Law,* 131 U.Penn.L.R. 1063, 1111–12 (1983).

■ Participation of a fugitive in the extradition process by appearing for proceedings in the state from which extradition is sought does not alter the fugitive's status as a fugitive. The purpose of the procedural safeguards of the Uniform Criminal Extradition Act is not to legitimize the resistance of fugitives to lawful extradition, but to prevent wrongful detention and rendition to a demanding state of persons mistakenly believed to be subject to extradition. The fugitive has no "right" to fight extradition; rather, he benefits indirectly from the safeguards afforded to ensure the liberty of non-fugitives. Only return to the demanding state to answer the charges pending can alter an actual fugitive's status as a fugitive. Thus, appellant was in fact a fugitive when leave was granted to the Commonwealth to file an information against appellant pursuant to Pa.R. Crim.P. 231(a), without conducting a preliminary hearing, despite the fact his whereabouts in New Jersey were known and he was participating in extradition proceedings in New Jersey.

### B.

■ The trial court concluded that appellant's fugitive status *alone* was sufficient "good cause" under Pa.R. Crim.P. 231(a) to permit the filing of an information against appellant and to deny appellant a preliminary hearing. In this the trial court erred.

Prior to 1979, Pa.R.Crim.P. 231 permitted, *inter alia,* the filing of an information against a defendant anytime a preliminary hearing could not be held because "the defendant cannot be found in the Commonwealth." *See e.g. Commonwealth v. Boyle,* 470 Pa. 343, 353–355, 368 A.2d 661, 666–667 (1977). The breadth of the pre–1979 rule was necessitated by the requirement of an indictment or information in order to toll a statute of limitations and to

commence formal extradition. However, by 1979 these justifications for denying defendants the benefit of a preliminary hearing had been greatly reduced or removed. *See* Report, 9 Pa.Bull. 236, 236–39 (Pa.R.Crim.P.Comm., January 20, 1979). The Pennsylvania Rules of Criminal Procedure Committee succinctly summarized its position regarding the prior rule as follows:

[C]hanges in the law have resulted in a situation where, in most instances, indictment/information is no longer necessary in order to toll the statute of limitations or to effect extradition of the defendant. Therefore, the Committee believes that the Rule 224/231 provision which authorized bypass of the preliminary hearing where 'the defendant cannot be found in the Commonwealth,' has become overly broad.

9 Pa.Bull. at 237. Because, however, an exceptional case might arise where the statute of limitations or extradition might yet present a problem (as where a sister state had not adopted the Uniform Criminal Extradition Act) the Committee concluded that the bypass procedure should not be repealed altogether. 9 Pa.Bull. at 238. Instead, the committee proposed that the rule be amended to provide as follows:

**Rule 231. Presentation of Information without Preliminary Hearing**

(a) When the attorney for the Commonwealth certifies to the court of common pleas that a preliminary hearing cannot be held for a defendant because the statute of limitations will otherwise bar prosecution, an information is necessary in order to extradite the defendant, or a preliminary hearing cannot be held for *other good cause,* the court may grant leave to the attorney for the Commonwealth to file an information with the court without a preliminary hearing.

(Emphasis added). The Committee also proposed the following Comment to the proposed rule:

Comment: The prior language of the rule, permitting use of this bypass procedure where the defendant cannot

be found in the Commonwealth, was deleted in light of changes in law simplifying the process for obtaining custody of the defendant. *It is intended that use of the bypass procedure as set forth in paragraph (a) will be limited to exceptional circumstances.*

(Emphasis added). Our Supreme Court adopted the Committee's proposal without change.

As noted in *Commonwealth v. Costello*, 301 Pa.Super. 537, 448 A.2d 38 (1982), though neither the Comment to Pa.R.Crim.P. 231 nor the Committee's report control our construction of Pa.R.Crim.P. 231(a), they are nevertheless "effective aids" in construing the rule. 448 A.2d at 40. Moreover, in *Costello* we expressly held that Pa.R.Crim.P. 231(a) was in fact intended to be restricted to *exceptional cases.* 448 A.2d at 41.

The order granting the Commonwealth leave to proceed under Pa.R.Crim.P. 231(a) in the instant case stated that it was granted based upon *"other good cause* as per the attached affidavit." (Emphasis added). The attached affidavit averred:

1. A written criminal complaint was signed against the defendant.
2. An arrest warrant was issued.
3. The warrant was returned undelivered.
4. The whereabouts of the defendant are unknown to the Commonwealth.
5. The defendant was declared a fugitive by the District Justice.

The fourth averment is acknowledged by the Commonwealth to have been false at the time it was made.[3] There is no indication in the record certified to this Court that the averments of the Commonwealth were orally supplemented at the *ex parte* hearing on March 4, 1986. Hence, the issue

3. Although the false averment does not affect our disposition of this issue, we join the trial court in admonishing the Commonwealth to guard more closely against making false statements in sworn affidavits. We note that other sanctions besides reversal of convictions may result from such conduct.

of whether Pa.R.Crim.P. 231(a) properly applied in the instant case depends upon whether fugitive status *standing alone* constitutes "good cause" under Pa.R.Crim.P. 231(a) as amended.

In *Commonwealth v. Costello, supra,* we approached but did not reach this issue because the record in *Costello* did not contain sufficient evidence to establish that the defendant was in fact a fugitive. In this case, no such circumstances cloud our analysis. Appellant was unquestionably a fugitive. (Discussed, *supra* ). Moreover, it is equally clear that no statute of limitations problem existed. *See Commonwealth v. Mascitti,* 368 Pa.Super. 454, 458, 534 A.2d 524, 526 (1987) (accused's continued absence from the Commonwealth tolled statute of limitations regardless of reason(s) for the absence). Thus, the only arguably "exceptional circumstance" presented was the alleged need to have an information filed in order to expedite extradition proceedings and thereby protect the Commonwealth's interests in bringing defendant to trial before memories faded and evidence was forever lost. (Appellant's Brief at 13–14). While the Commonwealth's interests in this respect are substantial, we cannot agree that filing an information under Pa.R.Crim.P. 231(a) was necessary to protect those interests in this case.

When it was first discovered that appellant was in New Jersey and did not intend to return for the preliminary hearing on the refiled charges, the Commonwealth properly contacted the New Jersey authorities who then arrested appellant. Pursuant to New Jersey law, appellant was taken before a New Jersey magistrate and then released on five hundred dollars ($500.00) bail. *See* N.J.S.A. § 2A:160–21 (Arrest of Accused Before Requisition Made); N.J.S.A. § 2A:160–22 (Arrest of Accused Without Warrant [before Requisition Made] ); *cf.* 42 Pa.C.S.A. §§ 9131, 9135.

However, the Commonwealth thereafter failed to seek a Governor's requisition in Pennsylvania. Instead, the Commonwealth forwarded to New Jersey officials the Pennsylvania arrest warrant *without an accompanying Gover-*

*nor's requisition.* Under New Jersey law, formal extradition cannot be made without a Governor's requisition from the demanding state. N.J.S.A. § 2A:160–14; *accord* 42 Pa.C.S.A. § 9124.

The Commonwealth argues in their brief to this Court that:

> Appellant was properly declared a fugitive on February 13, 1986, when he refused to attend his preliminary hearing [and return] from New Jersey.
>
> The only resourse [sic] available to the Commonwealth to secure appellant's presence was through extradition per governor's warrant. *In order to expidite* [sic] *this procedure, it was necessary to have a bench warrant issued by the Court of Common Pleas.* Therefore, the District Attorney filed an information pursuant to Rule 231 and a bench warrant issued when appellant failed to appear for arraignment on the information. Thereafter, the District Attorney commenced proceedings to obtain the Governor's Warrant.

(Commonwealth's Brief at 13) (emphasis added).

Upon review of the controlling statutes (the Uniform Criminal Extradition Act as adopted in Pennsylvania (requisition) and New Jersey (rendition)), we see no reason why the Commonwealth should have delayed its request for a Governor's requisition [4] until an information was filed and a bench warrant was issued. The Pennsylvania statute regarding requests for a Governor's requisition provides in pertinent part:

**42 Pa.C.S.A. § 9144. Issuance of requisition**

(a) **Return of accused.**—When the return to this Commonwealth of a person charged with crime in this Com-

---

4. A Governor's "requisition" is issued by the demanding state's Governor and is transmitted to the rendering state with appropriate papers attached (*e.g.* indictment, information, complaint and affidavit) as a formal request for extradition; a Governor's "warrant" is issued by the rendering state's Governor (when the requisition papers are in order) directing the police of the rendering state to arrest the fugitive and to turn the fugitive over to the designees of the Governor of the demanding state. *See* 42 Pa.C.S.A. §§ 9144, 9124, 9128.

monwealth is required the prosecuting attorney shall present to the Governor his written application for a requisition for the return of the person charged, in which application shall be stated the name of the person so charged, the crime charged against him, the approximate time, place and circumstances of its commission, the state in which he is believed to be, including the location of the accused therein at the time the application is made, and certifying that in the opinion of the said prosecuting attorney the ends of justice require the arrest and return of the accused to this Commonwealth for trial, and that the proceeding is not instituted to enforce a private claim.

\* \* \* \* \* \*

(c) **Procedure.**—The application shall be verified by affidavit, shall be executed in duplicate and shall be accompanied by two certified copies of the indictment returned, or information and affidavit filed, *or of the complaint made to the judge or issuing authority stating the offense with which the accused is charged,* or of the judgment of conviction, or of the sentence.

(Emphasis added). The New Jersey statute regarding acceptance of Governor's requisitions provides:

No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, except in cases arising under section 2A:160–14 of this title, *and accompanied* by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, *or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon;* or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation and parole. The

indictment, information, *or affidavit made before the magistrate* must substantially charge the person demanded with having committed a crime under the law of that state; and *the copy of the* indictment, information, *affidavit,* judgment of conviction or sentence *must be authenticated by the executive authority making the demand.*

(Emphasis added). Neither of the above statutes, nor any other relevant statute or administrative rule of either Pennsylvania or New Jersey, required the issuance of a bench warrant for appellant prior to extradition or provided for expedition of extradition if a bench warrant was issued. To the contrary, the above statutes demonstrate that requisition and rendition could properly have been based upon the complaint and arrest warrant alone.

Because neither indictment, nor information, nor bench warrant was required to extradite the accused from New Jersey, appellant's status as a fugitive did not constitute an exceptional circumstance so as to come within the "other good cause" provision of Pa.R.Crim.P. 231(a). Hence, we conclude that appellant was improperly denied a preliminary hearing.

## C.

In *Commonwealth v. Costello, supra,* this Court stated:
We hold, therefore, that the Commonwealth failed to show the existence of 'exceptional circumstances' that would constitute 'good cause' under Rule 231, as amended. Where *no preliminary hearing has been held* and there exist none of the recognized exceptions to the holding of a preliminary hearing, the proper remedy is to quash the information. *Commonwealth v. Brabham,* 225 Pa.Super. 331, 309 A.2d 824 (1973).

In view of our disposition of the Rule 231 question, we do not need to reach the other issues raised by appellant in this appeal.

The judgment of sentence is reversed, appellant's conviction is vacated, the information is quashed and appellant is discharged.

448 A.2d at 41. Appellant seeks identical relief.

Succinctly, we find that despite the holding in *Costello*, not every denial or abridgement of an accused's right to a preliminary hearing warrants reversal and discharge following an otherwise fair trial and conviction. In *Commonwealth v. Emmett*, 274 Pa.Super. 23, 417 A.2d 1232 (1979), this Court declined to grant a defendant discharge following his conviction where the violation of Pa.R.Crim.P. 231 was technical and the defendant had not demonstrated any prejudice arising from the violation. Likewise, in *Commonwealth v. Ruza*, 511 Pa. 59, 511 A.2d 808 (1986), our Supreme Court held that it was unnecessary to decide whether "good cause" to proceed under Pa.R.Crim.P. 231(a) had been established, as any error in that regard would be deemed harmless in that the pre-trial hearing conducted in that case provided procedural protections equivalent to a preliminary hearing.

Similarly, this Court has held on several occasions that the denial of counsel at the preliminary hearing stage will not require post-conviction relief unless actual prejudice is shown to have arisen from the denial of counsel. *See Commonwealth v. Bennie*, 352 Pa.Super. 558, 508 A.2d 1211 (1986); *Commonwealth v. Bastone*, 321 Pa.Super. 232, 467 A.2d 1339 (1983); *Commonwealth v. Rines*, 247 Pa.Super. 429, 372 A.2d 901 (1977). Indeed, the requirement that a defendant must show both error and prejudice to warrant relief is the general rule in criminal appeals. *See e.g. Commonwealth v. Revtai*, 516 Pa. 53, 532 A.2d 1 (1987) (violation of Pa.R.Crim.P. 130(d) does not require relief in absence of actual prejudice arising from the violation); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987) (error by prior counsel does not require relief in absence of actual prejudice arising from the error).

Based on the foregoing, we conclude that appellant herein must demonstrate prejudice arising from the violation of

Pa.R.Crim.P. 231(a) before reversal of his convictions and discharge would be required or appropriate.

### D.

When appellant finally returned to Pennsylvania and entered an appearance to answer the charges against him, he was then entitled to a preliminary hearing. Had one been granted at that juncture, our inquiry would be at an end. Instead, appellant was given hearings on his motions to quash the informations and suppress evidence *and then released on bail pending commencement of trial the following day.* Trial commenced and was completed on the following day. It is thus apparent that the principal function of a preliminary hearing, *i.e.* to protect the individual from unlawful detention and coercive interrogation, was not compromised. *See Commonwealth v. Douglass,* 372 Pa.Super. 227, 238, 539 A.2d 412, 418 (1988); *citing Commonwealth v. Duncan,* 514 Pa. 395, 406, 525 A.2d 1177, 1180–81 (1987). Appellant was never detained in Pennsylvania prior to his conviction; rather, he appeared already accompanied by counsel, was promptly released on bail, and was brought to trial one day later.

The only prejudice which appellant alleges is as follows:

Had Appellant been afforded the preliminary hearing, he would have been aware of the existence of the record of phone calls authored by one or both of the 'victims' and would have been able to call the correct witness for impeachment. Further, at the suppression hearing he would have been aware of the claimed existence of a prior arrest warrant (upon which the search was premised), and would have been able to contest its existence by subpoenaing it.

In *Coleman v. Alabama,* 399 U.S. 1, 9 [90 S.Ct. 1999, 2003, 26 L.Ed.2d 387] (1970), the United States Supreme Court held that the preliminary hearing is a 'critical stage' in that it provides discovery that may not be uncovered otherwise. Through it's abuse of the bypass

procedure, the prosecution robbed the defense of this opportunity, resulting in prejudice to the Appellant.

(Appellant's Brief at 14–15). Neither assertion demonstrates actual prejudice to appellant arising from the denial of a preliminary hearing.

█ The first assertion alleges that had a preliminary hearing been held, appellant would have been able to present an *unspecified* witness to present *unspecified* impeachment evidence. In the absence of affidavits outlining proposed testimony or at least an offer of proof regarding the source and nature of the evidence not discovered or used, any claim of prejudice relating to such evidence must be rejected as being too vague and speculative. *Cf. Kittrell v. Dakota,* 373 Pa.Super. 66, 74–76, 540 A.2d 301, 305–06 (1988) (no prejudice demonstrated when appellant failed to disclose specific evidence not discovered or used which allegedly would have aided his case); *see also Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Petras,* 368 Pa.Super. 372, 382, 534 A.2d 483, 488 (1987); *Commonwealth v. Stinnett,* 356 Pa.Super. 83, 88, 514 A.2d 154, 157 (1986).

The second assertion alleges that the failure to permit a preliminary hearing denied appellant the opportunity to challenge the existence of the alleged prior warrant relating to the prior incidents of harassment by subpoenaing the warrant. Although it is true that appellant was precluded from subpoenaing the warrant or otherwise challenging its existence, it was not the absence of a preliminary hearing which precluded the inquiry. Rather, appellant's request for a continuance to subpoena the warrant was denied by the trial court during the suppression hearing *on relevancy grounds.* (N.T. 5/5/86 at 23–24). We find no prejudice arising from the denial of an opportunity to secure and present evidence which the trial court has specifically determined to be irrelevant.

As no actual prejudice arose from the improper denial of a preliminary hearing in this case, we reject appellant's first contention on appeal. We note, however, that in the future,

fugitives should ordinarily be extradited without recourse to Pa.R.Crim.P. 231(a) and that a preliminary hearing should be held promptly upon return of the accused from a rendering state. Only when, *for some exceptional reason,* extradition may not be accomplished without the filing of an information should Pa.R.Crim.P. 231(a) be deemed applicable.

## II.

Appellant next contends that the trial court erred in concluding that evidence derived from a warrantless search of the car which appellant drove to the scene of the crime was admissible at trial under the plain view exception. Appellant argues that the search of the automobile was illegal because: 1) the Commonwealth failed to produce the prior warrant upon which the probable cause predicate for the plain view exception search was allegedly based; and 2) neither of the crimes suspected was a felony. We find no merit in either contention.

## A.

Generally, a subjective expectation of privacy as to that which is located in an area of common access will be deemed to be unreasonable; and therefore, visual observation of evidence located in open view in an unprotected area does not constitute a search so as to trigger Fourth Amendment protections. *Commonwealth v. Chiesa,* 329 Pa.Super. 401, 406–07, 478 A.2d 850, 853 (1984) (no search when police officer shined flashlight and looked into car which was parked unattended in a driveway shared with visitors and fellow tenants); *see also* I *LaFave, Search and Seizure,* § 2.2(a) at 322–23 (2nd Ed.1987); Moylan, *The Plain View Doctrine,* 26 Mercer L.Rev. 1047, 1097–98 (1975). Because there is no search, there is no need for an *exception* to permit admission of testimony relating to the observation. Hence, such cases may properly be distinguished as relying on an open view or plain view *doctrine,* rather than the plain view *exception* as formulated in *Coolidge v. New*

*Hampshire,* 403 U.S. 443, 91 S.Ct. 2202, 29 L.Ed.2d 564 (1971) (plurality) *reh. den.* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971), and refined in its progeny. *See* I *LaFave, Search and Seizure* § 2.2(a) at 320–23; Moylan, *supra,* at 1097–98; Note, *"Plain View"—Anything But Plain,* 7 Loyola L.Rev. 489, 489 n. 3 (1974).

The plain view *exception* is ordinarily applicable where there has been a physical intrusion into a protected area prior to the observation of the evidence, or where physical intrusion for a search or seizure follows an initial (non-search) observation from outside a protected area. The orthodox statement of the plain view exception is, that before the police may conduct a warrantless search or seizure of evidence in plain view: the police must be lawfully present at the vantage point from which the evidence is discovered; the discovery of the evidence must be inadvertent; and, the probable evidentiary value of the evidence must be immediately apparent. *See generally* I *LaFave, Search and Seizure* § 2.2 at 320–350; Hall, *Search and Seizure,* §§ 3.9–3.16 at 62–71 (1982 & 1987 Cumm.Supp.).

In the instant case, a police officer looked in the window of an automobile meeting the description of that driven by appellant which was parked in a public lot and saw part of a wig similar to that worn by appellant during an earlier incident reported to the police. No search occurred at this juncture.

▮ The investigating officer commenced his "search" by opening the car door. *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (search occurred when stereo in plain view was moved to make a closer examination). This search was justified by the combined effect of the plain view exception and the automobile exception. The officer's observation was from a lawful vantage point, the discovery of the wig was inadvertent (its location was not known prior to the observation through the window), and its evidentiary value was readily apparent. Though the view of evidence located in plain view within a protected area does not ordinarily justify an intrusion into the protected area to conduct a further search or a seizure of the evi-

dence, the mobility of a motor vehicle is deemed to provide sufficient exigency to warrant such an intrusion even when the accused is in police custody. *See Commonwealth v. Baker,* 518 Pa. 145, 148–149, 541 A.2d 1381, 1383–84 (1988), *aff'ing* 347 Pa.Super. 213, 215–18, 500 A.2d 483, 484–85 (1985); *Commonwealth v. Milyak,* 508 Pa. 2, 7–9, 493 A.2d 1346, 1349–50 (1985). The officer was thus authorized under the plain view exception to open the car door to search (view more closely) or seize (take possession of) the wig. Upon opening the car door to *search* (view more closely) the wig,[5] the revolver was also lawfully brought into plain view. *See Commonwealth v. Burton,* 292 Pa.Super. 73, 75–76, 436 A.2d 1010, 1011–12 (1981) (lawful plain view seizure of bag of marijuana on seat of car placed officer in lawful position to make lawful plain view seizure of cocaine which then came into view).

## B.

Appellant argues, however, that because the warrant (upon which appellant alleges the investigating officer's belief that the wig was evidence of a crime was based) was not produced, the order of the suppression court cannot be sustained. Appellant is in error.

The record clearly indicates that the investigating officer never claimed to have seen the prior warrant or to have relied upon it. Rather, the investigating officer expressly relied upon information received from a fellow police officer at roll call on November 20, 1985, concerning the prior warrant and the substance of appellant's wife's previous police reports. The information received from the fellow police officer included a description of appellant, the car he drove, and the yellow wig he wore during the earlier incident. (N.T. 5/5/86 at 19–24). We agree with the trial court that the failure to produce the disputed prior warrant

5. The physical seizure of the wig and gun was actually accomplished during the inventory process when the car was impounded. (N.T. 5/5/86 at 20, 29–30). The seizure of the wig and gun during the inventory process has not been challenged on appeal. *See Commonwealth v. Martinson,* 368 Pa.Super. 130, 533 A.2d 750 (1987) (the constitutionality of inventory searches of impounded vehicle upheld).

was irrelevant to the disposition of the suppression claim, as the Commonwealth's plain view theory did not rely on either the validity or the existence of the disputed prior warrant. (N.T. 5/5/86 at 23–24). We note that in this case reliance by a police officer upon information provided by a fellow police officer was manifestly reasonable. *See Commonwealth v. Weidenmoyer,* 518 Pa. 2, 12–13 n. 6, 539 A.2d 1291, 1296 n. 6 (1988).

## C.

Appellant also contends that the search was illegal because there was not probable cause to believe that the wig was evidence of a *felony* as opposed to a *misdemeanor.* In the instant case, we need not pass on the existence of such a limitation, as probable cause to believe the wig may have been relevant evidence in a felony trial clearly existed. Prior to searching the car, the investigating officer was aware that prior harassment complaints had been filed, one of the complaints involved a car and a wig like that discovered by the officer, and the current incident (which the officer was investigating) involved forcible entry and some kind of assault. (N.T. 5/5/86 at 15–16, 19–21). Thus, the information which the officer had prior to opening the car door indicated that the wig was evidence of a continuing course of criminal conduct which included acts which might constitute felonies. We find that information to be a sufficient predicate of "apparent evidentiary value" to justify a search under the plain view exception; we note that the question of probable cause is one of probabilities, not absolutes. *See Commonwealth v. Weidenmoyer, supra,* 518 Pa. at 13–14 & n. 7, 539 A.2d at 1297 & n. 7; *see also* Grano, *Probable Cause and Common Sense,* 17 U.Mich.J.L.Ref. 465, 465–521 (1984).

## III.

■ Appellant's last contention is that the evidence was insufficient to establish that he possessed the firearm with the requisite intent to sustain the firearms conviction, *i.e.* that appellant knew the gun was in the car. Appellant

acknowledged that he himself had placed the gun in the car the day before the incident in question. He claimed, however, that he had forgotten that he had put it there when he later drove to Pennsylvania. The finder of fact (in this case the trial judge) was free to believe all, part, or none of appellant's testimony. Under the circumstances of this case, the trial court's rejection of appellant's self-serving claim of forgetfulness is sustained by sufficient evidence.[6]

## CONCLUSION

Based upon the foregoing, judgment of sentence is affirmed.

BECK, J., concurs in the result.

**6.** Appellant attempts to bootstrap a weight of the evidence challenge to the sufficiency argument preserved. The argument has been waived; moreover, it is plainly without merit. Similarly, appellant raises for the first time on appeal the novel question of whether a suspended state trooper of a sister state may claim exemption from the licensing requirement under the "other law enforcement officers" exception set forth at 18 Pa.C.S.A. § 6106(b)(1). Though interesting, we find this claim waived. Pa.R.Crim.P. 1123. While evidence upon which the claim is based was presented in the trial court, the theory advanced on appeal was not. Theories not advanced in the trial court will not be considered on appeal. *See Commonwealth v. Johnson,* 355 Pa.Super. 123, 140–41, 512 A.2d 1242, 1251 (1986) (citing cases).