627 A.2d 1224

COMMONWEALTH of Pennsylvania, Appellant,

v.

Eugene K. HENDRIX, Appellee.

Superior Court of Pennsylvania.

Submitted April 13, 1993.

Filed July 14, 1993.

Kemal A. Mericli, James R. Gilmoore, Asst. Dist. Attys., Pittsburgh, for Com., appellant.

Rosalyn L. Guy, Pittsburgh, for appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal by the Commonwealth from the order of the Court of Common Pleas of Allegheny County which suppressed a handgun seized from appellee's car. The Commonwealth contends that the lower court erred in suppressing the evidence given the facts of this case. Having reviewed the record, we reverse the order suppressing the handgun and remand for trial.[1]

When passing on a challenge to a decision of a suppression court, we may consider only the evidence of defense witnesses and so much of the Commonwealth's evidence that, read in the context of the record as a whole, remains uncontradicted. We are limited primarily to questions of law, and we are bound by the suppression court's findings of fact, provided those findings are supported by the

---

1. The Commonwealth has stated in its brief that the suppression order in question terminates or substantially handicaps its prosecution of appellee, and, therefore, this appeal is properly before us. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

record. *Commonwealth v. Griscavage,* 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986); *Commonwealth v. Marconi,* 408 Pa.Super. 601, 607, 597 A.2d 616, 619 (1991) appeal denied 531 Pa. 638, 611 A.2d 711 (1992); *Commonwealth v. Person,* 385 Pa.Super. 197, 200, 560 A.2d 761, 762–63 (1989). Governed by the foregoing standard, our review of the record reveals the following facts: On April 18, 1991, during the early afternoon hours, a caller, identified as Mrs. Milbern of 134 Central Street, telephoned the police. She informed the dispatcher that seven black males were at her residence, that they were "after" her nephew and that one of the males had a gun. She also provided the license plate numbers of the two automobiles which the men were driving.

Upon their arrival approximately ten minutes after the call, two uniformed police officers observed three or four cars "parked in the middle of the street" and a group of black males gathered in front of the house in question. A woman flagged down the officers and told them that the men were looking for her nephew who was not there and she wanted the men to leave her property. The homeowner's son also spoke to police and indicated that the dispute involved a drug transaction and that they "were out to hurt him.". The woman also informed the police that she believed one of the men had a gun—although she had not personally seen a weapon—since one of the men had indicated that another possessed a weapon.

While continuing to discuss this matter with the parties at the scene, the officers attempted to observe any "bulges" on the persons of the black males who were milling about the yard. Officer Haywood testified that during this time, appellee and another male walked over to a yellow Oldsmobile Delta 88, the license plate of which matched one of the two given in the original report. The car was parked in the middle of the street. Officer Haywood approached appellee as he was entering the car and told him to move his vehicle from the middle of the street. Appellee then pulled his car onto the berm. While appellee was moving his car, Officer Haywood inspected the interiors of the other vehicles in the

620

area. When appellee stopped his car and began to exit the vehicle, Officer Haywood looked inside the car. He observed a blue bag marked with the "Smith & Wesson" logo lying on the front seat. Officer Haywood recognized this bag as a standard handgun case. As soon as appellee exited the car, the officer then reached into the vehicle to seize the handgun bag. Before the officer actually touched the bag, appellee stated, "Hey man, there's a gun in the bag." [2] Officer Haywood then grabbed the bag and opened it, revealing its contents—a "Brownie high powered semi-automatic handgun" with a round in the chamber, a loaded clip in the gun and another loaded clip in the bag. Appellee was then arrested and charged with a single violation of 18 Pa.C.S.A. § 6106, firearm not to be carried without a license.

Following a suppression hearing, the lower court ordered the weapon suppressed. The court reasoned that the police "arrested the defendant and searched his vehicle without probable cause and without a warrant, and thereby violated his rights as protected by the Constitutions of the Commonwealth of Pennsylvania and the United States." Trial Court Opinion, p. 2. The court further stated that there was no basis for the existence of exigent circumstances which would justify the warrantless search of appellee's vehicle. The court also rejected the Commonwealth's assertion that the "plain view" exception to the exclusionary rule validates the warrantless seizure of the weapon from appellee. The Commonwealth reasserts herein its "plain view" argument.

Before addressing the merits of the Commonwealth's argument, we recite the discussion of the plain view *doctrine* and the plain view *exception* to the warrant requirement as set

2. The lower court in its recitation of the facts appears to indicate that appellee made this statement after the bag was seized. However, the record clearly reveals that the statement was made before the handgun bag was secured by Officer Haywood, albeit only moments before the seizure. N.T., 6/12/92, pp. 9–10. Further, the record clearly reveals that appellee had neither been arrested or detained until *after* he stated there was a gun in the Smith & Wesson gun bag and the officer secured the bag. N.T., 6/12/92, p. 11. To the extent that the lower court's findings of the facts are contradicted by the record, we are not bound by those findings. *Griscavage, supra.*

forth in *Commonwealth v. Ferrari*, 376 Pa.Super. 307, 325–326, 545 A.2d 1372, 1381 (1988):

Generally, a subjective expectation of privacy as to that which is located in an area of common access will be deemed to be unreasonable; and therefore, visual observation of evidence located in open view in an unprotected area does not constitute a search so as to trigger Fourth Amendment protections. *Commonwealth v. Chiesa*, 329 Pa.Super. 401, 406–407, 478 A.2d 850, 853 (1984) (no search when police officer shined flashlight and looked into car which was parked unattended in a driveway shared with visitors and fellow tenants); *see also* I *LaFave, Search and Seizure*, § 2.2(a) at 322–23 (2nd Ed.1987); Moylan, *The Plain View Doctrine*, 26 Mercer L.Rev. 1047, 1097–98 (1975). Because there is no search, there is no need for an *exception* to permit admission of testimony relating to the observation. Hence, such cases may properly be distinguished as relying on an open view or plain view *doctrine*, rather than the plain view *exception* as formulated in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality) *reh. den.* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971), and refined in its progeny. *See* I *LaFave, Search and Seizure* § 2.2(a) at 320–23; Moylan, *supra*, at 1097–98; Note, *"Plain View"—Anything But Plain*, 7 Loyola L.Rev. 489, 489 n. 3 (1974).

The plain view *exception* is ordinarily applicable where there has been a physical intrusion into a protected area prior to the observation of the evidence, or where physical intrusion for a search and seizure follows an initial (non-search) observation from outside a protected area. The orthodox statement of the plain view exception is that before the police may conduct a warrantless search or seizure of evidence in plain view: the police must be lawfully present at the vantage point from which the evidence is discovered; the discovery must be inadvertent; and, the probable evidentiary value of the evidence must be immediately apparent. *See generally* I *LaFave, Search and Sei-*

zure § 2.2 at 320–350; Hall *Search and Seizure,* §§ 3.9–3.16 at 62–71 (1982 & 1987 Cumm.Supp.).

We note that the United States Supreme Court in *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d. 112 (1990), eliminated the "inadvertence" requirement as unnecessary to insure the protection of Fourth Amendment rights. *See also, Commonwealth v. McCullum,* 529 Pa. 117, 602 A.2d 313 (1992).

Thus, in performing the plain view analysis, we must first discern whether the police were lawfully in a position to view the evidence in question. *Ferrari, supra; Commonwealth v. Merkt,* 411 Pa.Super. 127, 130–131, 600 A.2d 1297, 1299 (1992). Instantly, Officer Haywood was responding to a crime report which indicated a group of black males were "after" Mrs. Milbern's nephew and that one of the males had a gun. Upon arriving at the scene, Officer Haywood was informed by the homeowner and her son that one of the males had indicated that another member of the group had a gun, although neither were able to identify which black male, if any, actually had a weapon. In an effort to ascertain whether a weapon was present, Officer Haywood observed the black males' demeanor and appearance, checking for any bulge in their clothing which might indicate the presence of a weapon.

Further, he visually inspected the interiors of the automobiles at the scene. Prior to looking into the passenger compartment of appellee's vehicle, Officer Haywood asked appellee to move his Oldsmobile (the license plate number of which was given to the police dispatcher as one of the vehicles in which the group of black males were travelling) out of the middle of the street where it was parked. After appellee moved the vehicle, Officer Haywood eyed the interior of the Oldsmobile at which time he spotted the Smith & Wesson handgun bag lying on the front seat of the automobile.

Undoubtedly, Officer Haywood was lawfully at the vantage point from which he observed the handgun bag, i.e., he was outside of the car when it was parked along a public road and he had not detained the car and its driver. It was proper for

Officer Haywood to look in the vehicle to see if there were any weapons visually apparent given the nature of the police call and his additional discussions with the homeowner and her son which indicated a gun might be present at the scene. Further, the fact that he had asked appellee to move his vehicle does not render Officer Haywood's vantage point improper, since it was entirely appropriate for him to ask appellee to move his parked Oldsmobile from the middle of the street. *Cf., Ferrari, supra* (police officer lawfully in position to observe incriminating evidence when looking in window of vehicle which was parked in public lot); *Chiesa, supra* (no search when police looked into car which was parked unattended in common driveway).

Second, we must determine whether the evidentiary value of the evidence was immediately apparent. *Ferrari, supra; Merkt, supra.* Although the contents of the gun case were not observable from outside of the vehicle, we find that the evidentiary value of the gun case and its contents was immediately apparent. Officer Haywood testified that he immediately recognized the bag as a handgun case from its size, shape and Smith & Wesson insignia. As was stated by the United States Supreme Court in *Arkansas v. Sanders*, 442 U.S. 753, 764–765 n. 13, 99 S.Ct. 2586, 2593–94 n. 13, 61 L.Ed.2d 235, 245 n. 13 (1979):

> Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example ... a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.

■ Given the fact that the officer was responding to a call which involved the alleged threat of the use of a handgun, we conclude that the evidentiary value of the *gun case* and, consequently, its contents were immediately apparent, despite the fact that the contents of the case were not visible. *Cf., Oregon v. McGregor*, 57 Or.App. 78, 84, 643 P.2d 1315, 1318 (1982) (defendant did not have a reasonable expectation of privacy with respect to pistol case which, by its distinctive

configuration, indicated its contents; therefore, after it was seized from automobile, it was reasonable to open it without a warrant); *United States v. Bonitz*, 826 F.2d 954, 956 (10th Cir.1987) (refusing to employ *Sanders* given the particular characteristics of the hard plastic rifle case therein which did not reveal its contents by its outward appearance; however, noting the *Sanders* dicta remains applicable to the "well known soft zippered gun cases"). Simply put, appellee had no reasonable expectation of privacy in the Smith & Wesson handgun case—the distinctive configuration of the pistol case itself proclaimed its contents.[3]

■ We are certain that Officer Haywood had probable cause to seize the handgun bag and its contents given that the officer was responding to a report allegedly involving the threatened use of a gun, that the officer recognized the case in question as a Smith & Wesson handgun case, and that the case was located in a vehicle known to be driven by one of the black males at the scene. While "the view of evidence located in plain view within a protected area does not ordinarily justify an intrusion into the protected area to conduct a further search or seizure of the evidence [without a search warrant], the mobility of a motor vehicle is deemed to provide sufficient exigency to warrant such an intrusion even when the accused is in police custody. *See Commonwealth v. Baker*, [518] Pa. [145], [148–150], 541 A.2d 1381, 1383–84 (1988), *aff'ing* 347 Pa.Super. 213, 215–18, 500 A.2d 483, 484–85 (1985); *Commonwealth v. Milyak*, 508 Pa. 2, 7–9, 493 A.2d 1346, 1349–50 (1985)." *Ferrari*, 545 A.2d at 1382. Accordingly, Officer Haywood, having observed the incriminating evidence in plain view, was authorized to seize the gun case without a search warrant under the automobile exception to the Fourth Amendment.

**3.** Even though *Sanders, supra,* has been overruled, in *United States v. Donnes,* 947 F.2d 1430, 1437 (10th Cir.1991), the Court of Appeals stated the plain view container exception to the warrant requirement set forth in footnote 13 of *Sanders, supra,* remains valid, when a container is "not closed," or "transparent," or when its "distinctive configuration ... proclaims its contents," and thus, the container supports no reasonable expectation of privacy.

Moreover, appellee admitted the handgun bag contained a gun before Officer Haywood had seized the bag and before he was either detained or arrested. Thus, appellee himself, by revealing the contents of the handgun case, relinquished any expectation of privacy he had in the bag. *Cf., Commonwealth v. Cardona-Rivera*, 904 F.2d 1149 (7th Cir.1990) (when arrested defendant was asked what packages in briefcase contained and he responded "coke", he "stripped the cloak of secrecy from the package", and warrantless search was proper); *U.S. v. Veatch*, 596 F.Supp. 1327 (D.C.Pa.1984) (officer had probable cause to believe car contained concealed weapon and warrantless search was proper where defendant blurted out he had a gun in the car during a weapons frisk at the arrest scene); *State v. Ludtke*, 306 N.W.2d 111 (Minn.1981) (when defendant said satchel in car contained hashish and guns, search without warrant proper since, by volunteering what the contents of the package were, defendant implicitly signaled that he no longer had any expectation of privacy in the satchel).

In sum, we reverse the decision of the court below and remand for trial. The Commonwealth is permitted to offer the handgun bag, the pistol, and the shells at trial.

Order reversed. Case remanded for trial. Jurisdiction relinquished.