417 A.2d 1232

COMMONWEALTH of Pennsylvania

v.

William Henry EMMETT, Appellant.

COMMONWEALTH of Pennsylvania

v.

Harold O'Neil CROSSLAND, Appellant.

Superior Court of Pennsylvania.

Submitted April 12, 1979.

Filed Dec. 28, 1979.

Wilbert H. Beachy, III, Public Defender, Somerset, for appellant, Emmett.

Joseph B. Policicchio, Assistant Public Defender, Somerset for appellant, Crossland.

David B. Hartman, Administrative Assistant District Attorney, Somerset, did not file a brief on behalf of the Commonwealth, appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

HESTER, Justice:

These consolidated appeals arise from the judgment of sentence of the Court of Common Pleas of Somerset County.

Both appellants herein were convicted of burglary, theft and receiving stolen property arising out of the same criminal episode.

Appellants were arrested in Garrett County, Maryland. Incident to the arrest, the contents of their pockets were examined. One of the articles in their possession was a validated, but unused Pennsylvania State Inspection Sticker. Also found was a key for a motel room in Uniontown, Pennsylvania.

After the arrest in Maryland, the Pennsylvania State Police were informed of the events and subsequently they discovered that the inspection sticker had been stolen in a burglary and theft in Confluence, Pennsylvania. The state police, thereafter obtained search warrants for the motel room in Uniontown and appellant Crossland's business and dwelling house.

The searches yielded two shotguns form the business and certain personal property and checks from the motel room, which items subsequently were found to be stolen.

After a non-jury trial on March 27, 1978, appellants were found guilty of burglary, theft and receiving stolen property. Post verdict motions were denied and this appeal follows.

Appellants initially contend that the lower court should have dismissed this action because the Commonwealth failed to bring them to trial within the mandates of Rule 1100.

On February 8, 1977, appellants were arrested in Maryland where they were being held on Maryland charges. Thus, the Commonwealth had 180 days from that date to bring appellant to trial or until August 7, 1977. Appellants were not tried until March 27, 1978.

The dispute here is with the period of time from February 8, 1977 to June 30, 1977. The Commonwealth asserted, and the lower court agreed that this period was to be excluded in computing the time for the Rule, since appellants were incarcerated in Maryland awaiting disposition of the Maryland charges.

Appellants contend, however, that before this time is excluded, the Commonwealth must show that they used due diligence in attempting to secure appellants return and in this case it is clear that no due diligence was shown, thus appellants were not unavailable for trial under Rule 1100(d)(1).

 Rule 1100(d)(1) provides that "in determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceed-

ings as results from (1) the unavailability of the defendant or his attorney." Mere incarceration in another jurisdiction, however, does not make appellant unavailable. Appellant will be considered unavailable only for the period of time during which his presence could not be secured despite due diligence by the Commonwealth. *Commonwealth v. Warman*, 260 Pa.Super. 130, 393 A.2d 1046 (1978); *Commonwealth v. Richbourgh*, 246 Pa.Super. 300, 369 A.2d 1331 (1977).

We must review the actions of the Commonwealth to determine whether they amounted to due diligence.

■ Due diligence under the Rule requires the Commonwealth to make a "reasonable effort", *Commonwealth v. Martofel*, 248 Pa. 207, 375 A.2d 60 (1977).

On February 11, 1977 (3 days after the complaints were filed in this case) Somerset County detectives made a telephone inquiry of the Maryland authorities as to appellants availability for trial in Pennsylvania. They were informed that appellants would not be released until Maryland authorities were finished with them.

After informations were filed in the case on April 20, 1977, arraignment was scheduled for May 2, 1977. However, this was postponed as the Commonwealth reported to the court that appellants were still incarcerated in Maryland.

On May 4 and May 6, 1977, the Somerset County District Attorney's office again asked the Maryland State Attorney when appellants would be available in Pennsylvania. The same response was received from Maryland.

On May 13, 1977, the District Attorney sent to the Maryland authorities a request for temporary custody of appellants under Article IV of the Interstate Agreement on Detainers.

On May 19, 1977, the District Attorney reported to the court that Maryland had refused to release appellants until they were sentenced.

On June 15, 1977, the Maryland State Attorney's Office, by letter, informed the District Attorney that appellants

were still awaiting sentence and would be released upon sentence.

On June 30, 1977, appellants were sentenced to three years in jail in Maryland.

On August 1, 1977, the District Attorney finally received notice that appellants had been sentenced in Maryland.

On August 22, 1977, the case was called for trial but the District Attorney reported that Maryland had not yet acted upon the Commonwealth's petition for temporary custody.

On September 15, 1977, the Maryland authorities gave notice to appellants of their rights under the Interstate Agreement on Detainers, and on September 27, 1977, appellants were returned to Somerset County to stand trial.

We believe the Commonwealth made sufficient effort to bring appellants to Pennsylvania. We count no less than five communications between Pennsylvania and Maryland authorities concerning the appellants. As soon as the Commonwealth knew they had been sentenced in Maryland, it moved to proceed under the Interstate Detainer Act. We can hardly equate this with the situation in *Commonwealth v. McCafferty*, 242 Pa.Super. 218, 363 A.2d 1239 (1976) where Commonwealth failed to invoke the procedures under the Interstate Detainer Act or with that presented in *Commonwealth v. Kovacs*, 250 Pa.Super. 66, 378 A.2d 455 (1977), wherein the Commonwealth waited six months to secure the defendant's return to Pennsylvania.

Here, however, appellant argues that the Commonwealth should not have relied on Maryland authorities to inform them when appellants had been sentenced, but should have monitored the progress of the Maryland proceedings themselves.

Imposition of such a duty on the Commonwealth would be unduly harsh. We believe that reliance on other authorities to be proper. In *Commonwealth v. Warman*, 260 Pa.Super. 130, 393 A.2d 1046 (1978), we held that it was proper for Somerset County authorities to rely on Allegheny County authorities to notify them when a particular defendant would be available for trial.

Here we find the reliance on Maryland authorities was proper. Thus, we dismiss appellants' first contention.

Appellants next contend that certain items seized without search warrants and certain items seized with warrants should have been suppressed.

Basically appellants complain that when they were arrested in Maryland the police had no right to search the truck and that the evidence produced from the truck therefore should not have been permitted to form the basis of search warrants executed on appellants' property in Pennsylvania.

The facts incident to the arrest and search in Maryland are as follows:

A watchman at the W. A. Fratz Company facility in Accident, Maryland, was directed to move a pickup truck parked on the company's property so that a truck could deliver fuel to a storage building. The pickup truck did not belong there and the watchman had not seen it before. The watchman noticed footprints in the fresh snow from the truck to the storage building. He found the keys in the truck and moved it to make room for the fuel truck. Following this, the watchman removed the keys, noted the license number and proceeded to advise his superior. While so engaged, he noticed a man walking toward Accident. It was the same man who had a short time prior thereto walked in front of the store proceeding in the opposite direction.

The state police were summoned. They placed a trace on the license number. At this time, appellant Crossland came to the store and requested the key to the pickup truck. Meanwhile, additional police arrived and quickly located the man who had been walking back and forth in front of the building.

Appellants were arrested for breaking and entering. Incident to the arrest their pockets were searched. Among the items found was a validated Pennsylvania inspection sticker. On the seat inside the truck the officers found a key for a motel room in Uniontown, Pennsylvania.

The Pennsylvania State Police having been informed of the sticker and having found that it had recently been stolen in a robbery in Confluence, Pennsylvania, obtained search warrants for the appellants' motel room, place of business, and dwelling house.

As a result of the materials seized, the appellants were charged with the crimes previously enunciated.

After execution of the arrest warrants in Maryland, Pennsylvania State Police interrogated appellants in Maryland. The police told them that certain stolen property had been recovered in Pennsylvania; after this each appellant gave an inculpatory statement concerning the offenses they were charged with in Pennsylvania.

Appellants do not dispute the validity of the search of their persons. They contend, however, that the police had no right to search the vehicle without a warrant.

In the search of the vehicle the motel key was found. The motel key had been lying on the front seat of appellant's truck which at the time of the arrest was parked adjacent to a warehouse which had been broken into. The key was protruding from a purse on the front seat. It plainly displayed the name and address of the motel from which it came.

We believe, given the circumstances of the events which occurred that night, the search was valid.

Vehicles being of a highly mobile nature, are not subject to the same strict requirements of search and seizures as an individual's home would be. *Commonwealth v. Clelland*, 227 Pa.Super. 384, 323 A.2d 60 (1974). However, it is clear that there is no "automobile exception" as such and that constitutional protections are applicable to searches and seizures of a person's car (or truck). *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978). The reason for this is two-fold. First a vehicle is highly mobile, thus, if police delay a search until a warrant is procured, the contraband and/or the vehicle may be removed. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Secondly,

a person's expectation of privacy toward an automobile is significantly less than that relating to the home. *Commonwealth v. Mangini,* 478 Pa. 147, 386 A.2d 482 (1978).

■ Here there is no question there was probable cause to believe that the truck was involved in criminal activity. The vehicle had been parked near the warehouse building which had been broken into; footprints in the fresh snow led from the vehicle to the open door of the warehouse. The vehicle did not belong to anyone who worked in the warehouse and the night guard did not recognize the vehicle. Clearly, there was probable cause to believe that the vehicle was involved in any theft which occurred in the warehouse that night. The nexus between the criminal activity (in the warehouse) and the area to be searched (the truck) was plainly established by the footprints.

In *Chambers v. Maroney,* supra, the court said:

"For constitutional purposes we see no difference between on one hand seizing and holding the car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either cause is reasonable under the Fourth Amendment." id. at 399 U.S. 52, 90 S.Ct. 1981.

There is also the fact that police could not be sure of just who was involved in this crime. That is, there could have been more than two people involved. Certainly, the Commonwealth had the duty to protect the evidence. There was a possibility that other actors involved could have removed the vehicle while police were securing a warrant.

We cannot say that the police conduct was unreasonable just because there were sufficient police available to secure a warrant while others remained to guard the vehicle.

"Where an automobile is the subject of a search the possibility of its movement and the concomitant disappearance of the contraband is a more critical factor than a court of the number of agents present who could be dispatched to a warrant issuing authority, *United States*

*v. Menke,* 468 F.2d 20, 23 (3d Cir. 1972)." *Commonwealth v. Berman,* 262 Pa.Super. 410, 396 A.2d 1237 (1978).

We therefore find that the search of the vehicle was valid.

Appellants also assert in connection with this, that the affidavit for the search warrants did not set forth sufficient facts to support the issuance of the warrant and that the warrants were not properly authenticated by the issuing magistrate.

■ Our review indicates that the affidavits supporting the warrants met the test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We also believe that the warrants were properly authenticated by the magisterial seal in accordance with 42 Pa.C.S. § 1512 which provides that the official acts of the magistrate are to be authenticated by the use of his seal.

Appellants next contend that the information should have been quashed because the Commonwealth failed to comply with Pa.R.Cr.P. 231.

Rule 231 provides for the filing of criminal information without a preliminary hearing by leave of court. Here, the informations against appellants were filed without holding a preliminary hearing and no leave of court was secured.

■ When appellants were returned to the Commonwealth they did have preliminary hearings. Appellants would have us discharge them because of the technical violations of Rule 231. However, we don't feel the nonfeasance below merits such action.

■ The principle function of the preliminary hearing is to protect an individual's rights against unlawful arrest and detention. *Commonwealth v. Wansley,* 248 Pa.Super. 234, 375 A.2d 73 (1977).

Clearly, here there was "good cause" under Rule 221 for the court to grant leave to proceed with the information without a preliminary hearing, as appellants were incarcerated in Maryland. See, *Commonwealth v. Boyle,* 470 Pa. 343, 368 A.2d 661 (1977).

Our problem is whether appellants should be discharged for a Rule violation when in every sense no prejudice resulted to appellants. They were not unlawfully detained and they had a chance to test the "prima facie case" of the Commonwealth.

While we do not condone the failure of the Somerset County District Attorney's Office to secure leave of court, we see no reason to discharge the appellants where no prejudice resulted. See, *Commonwealth v. Decosey*, 246 Pa.Super. 412, 371 A.2d 905 (1977).[1]

Judgment of sentence affirmed.

PRICE, J., concurs in the result.

[1]. The Somerset County District Attorney's Office chose not to file a brief in this case, but to rely on the lower court Opinion. The rules provide for no such unilateral action on their part and we expressly do not condone their failure to comply with the Appellate Rules.